MICHAEL BAILEY
United States Attorney
District of Arizona
BEVERLY K. ANDERSON
Assistant U.S. Attorney
Arizona State Bar No. 010547
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: bev.anderson@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR 18-01256-TUC-CKJ (JR) |
|---|---|
| Plaintiff, | |
| vs. | GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO PRESENTENCE REPORT |
| Joshua Joel Pratchard, | |
| Defendant. | |

Plaintiff, the United States of America, by and through its undersigned counsel, hereby responds to Defendant's Objections to the Presentence Report, as set forth in the attached Memorandum of Points and Authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

On June 2, 2019, the United States Probation Office issued a Draft Presentence Report ("PSR") (Doc. 66). The PSR set the base offense level at 26, under U.S.S.G. § 2K2.1, concluding that the instant offense was committed subsequent to sustaining at least two (2) felony convictions of either a "controlled substance offense" or a "crime of violence". Defendant objects to the guideline calculations and claims "[T]he PSR wrongly asserts that defendant has two (2) prior convictions that are qualifying convictions under the guidelines." (Brief at pg. 1). The Government agrees with the conclusion set forth in ¶ 28 of the PSR that Defendant's 2002 conviction for Wrongful Distribution and Use of Ecstasy is a "controlled substance offense" under U.S.S.G. § 2K2.1; however disagrees

with the conclusion that Defendant's 2009 conviction for Assault Resulting in Serious Bodily Injury meets the definition of "crime of violence" in the Ninth Circuit.

Defendant was arrested on June 1, 2018, on charges stemming from a six (6) month investigation involving the Defendant who traveled on several occasions from San Diego, California, to Southern Arizona to participate in militia group operations with AZ Border Recon (AZBR). The investigation began on January 30, 2018, when a Federal Bureau of Investigation confidential human source (CHS) contacted agents to inform them about the Defendant. The CHS noted that Pratchard arrived for the militia group operations with a short barreled-rifle, a silencer and other prohibited items. According to the CHS, Pratchard became angry when Tim Foley, the leader of AZBR, explained their standard operating procedures and rules of engagement when encountering illegal aliens or illegal narcotics. The Defendant wanted to go "hands on" with illegal aliens, which was contrary to the rules of the organization, and he argued with Foley on how to conduct patrols. Foley was concerned about the Defendant and prohibited him from engaging in future operations the AZBR.

The CHS reported that Pratchard admitted he was manufacturing his own firearms, silencers and ammunition in his home in San Diego. Agents ran a criminal history check and learned that the Defendant is a prohibited possessor. Records revealed that the Defendant had two (2) prior convictions, both of which were punishable by imprisonment for a term exceeding one (1) year. Records revealed Defendant was convicted under the Uniform Code of Military Justice in 2002 of multiple counts or specifications of Wrongful Use and Distribution of Ecstasy; plus he was convicted in 2009 of Assault Resulting in Serious Bodily Injury.

Defendant was arrested on June 1, 2018, and indicted on four (4) counts of Possession of a Firearm by Convicted Felon and two (2) counts of Transferring a Firearm to an Out-of-State Resident. Six (6) of the eight (8) firearms that are the subject of this case were submitted to the Bureau of Alcohol, Tobacco, Firearms, and Explosives Firearms Technology Criminal Branch for examination and testing. ATF concluded that of the six

(6) items sent to them for analysis, two (2) of the firearms were short-barreled rifles, one (1) was considered "any other weapon", two (2) of the items were silencers (also considered firearms) and one (1) was a standard rifle. The total count was six (6) firearms, five (5) of which were in violation of Title 26 U.S.C. § 5845(a).

On November 1, 2018, a Superseding Indictment was returned which charged the Defendant with four (4) counts of Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1); two (2) counts of Transferring a Firearm to an Out-of-State Resident, in violation of 18 U.S.C. §§ 922(a)(5) and 924(a)(1)(D); four (4) counts of Possession of Unregistered Firearm, in violation of 26 U.S.C. §§§ 5841, 5861(e), 5812, and 5871; two (2) counts of Transfer of Firearm in Violation of NFA, in violation of 26 U.S.C. §§§ 5861 (e), 5812, 5871; one (1) count of Possession of Body Armor by Violent Felon, in violation of 18 U.S.C. §§ 931(a) and 924(7), plus a forfeiture allegation.

A total of eight (8) firearms, five (5) of which are Title 26 firearms, and 1,464 rounds of ammunition are included within the Indictment.

### 1. **The Defendant's 2002 Court-Martial Conviction is a Controlled Substance Offense.**

The Defendant entered the Marine Corps on August 10, 1999, and on April 4, 2002, he pleaded guilty at a general court-martial to one (1) specification or count involving the wrongful use of 4-Methylenedioxymethamphetamine (Ecstasy), a Schedule I controlled substance, and three (3) specifications or counts involving the wrongful distribution of 4-Methylenedioxymethamphetamine (Ecstasy), a Schedule I controlled substance, all in violation of Article 112a of the Uniform Code of Military Justice. (Exhibit 1-Conviction Documents.) The Defendant was sentenced to three (3) years of confinement, with six (6) months suspended, and a bad conduct discharge. *Id*. The conviction and sentence were affirmed on appeal on May 18, 2004. The Defendant was released from confinement and placed on parole on April 15, 2003. His parole began on April 15, 2003, and ended on April 5, 2004. The distribution convictions are qualifying controlled substance offenses under U.S.S.G. §4B1.2.

In determining whether a prior conviction qualifies as a "controlled substance offense", the categorical approach established by the Supreme Court in *Taylor v. United States*, 495 U.S. at 602, 110 S. Ct. 2143, 109 L. Ed 607 (1990) is used. *See United States v. Corona-Sanchez,* 291 F.3d 1201, 1203 1212-13 (9th Cir. 2002) (en banc). Under *Taylor,* courts cannot examine the underlying facts of the prior offense, but "look only to the fact of conviction and the statutory definition of the prior offense." *Id*. at 1203 (quoting *Taylor,* 495 U.S. at 602, 110 S. Ct. 2143). Therefore, under the categorical approach, we must first look to the statute of conviction to determine if the offense would qualify as a "controlled-substance offense" for § 4B1.2 purposes. If the statute of conviction at issue is overbroad, that is, it applies to conduct that both falls within and outside the federal definition, then a conviction under the statute will not qualify.

The United States Sentencing Guidelines define a "controlled substance offense" as an offense under federal or state law, punishable by imprisonment for a term exceeding one (1) year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or counterfeit substance) with intent to manufacture, import, export, distribute, or dispense. U.S.S.G. §4B1.2(b).

Article 112a of the Uniform Code of Military Justice makes it a crime for service members to, among other things, "wrongfully" use, possess, manufacture, or distribute controlled substances. The punishments for use and distribution are different. The maximum punishment for the distribution of Ecstasy is fifteen (15) years of confinement, whereas the maximum punishment for the use of ecstasy is five (5) years of confinement. *See* Manual for Courts-Martial United States, ¶37.f.(3) (2000 edition). (Exhibit 2.) Under the categorical approach, if statutory alternatives carry different punishments, they must be elements, and the statute is divisible. *Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016).

The elements of the offense under Article 112a of the Uniform Code of Military Justice for the *wrongful distribution of a controlled substance* are: (1) the defendant distributed a certain amount of a controlled substance, and (2) the distribution by the

defendant was wrongful. According to the Manual for Courts-Martial:

> To be punishable under Article 112a, possession, use, distribution, introduction, or manufacture of a controlled substance must be wrongful. Possession, use, distribution, introduction, or manufacture of a controlled substance is wrongful if *it is without legal justification or authorization*. Possession, distribution, introduction, or manufacture of a controlled substance is not wrongful if such act or acts are: (A) done pursuant to legitimate law enforcement activities (for example, an informant who receives drugs as part of an undercover operation is not in wrongful possession); (B) done by authorized personnel in the performance of medical duties; or (C) *without knowledge of the contraband nature of the substance* (for example, a person who possesses cocaine, but actually believes it to be sugar, is not guilty of wrongful possession of cocaine).

(Emphasis Added).

> "Distribute" means to deliver to the possession of another. "Deliver" means the actual, constructive, or attempted transfer of an item, whether or not there exists an agency relationship.

Manual for Courts-Martial, ¶37.c.(3) and (4) (2000 edition). Thus, the offense requires knowing distribution.

In comparing the language of the U.S.S.G. §4B1.2 and the Manual for Courts-Martial, it is readily apparent that the full range of conduct contemplated by the Manual for Courts-Martial regarding the distribution of controlled substances falls precisely within the conduct defined in U.S.S.G. §4B1.2. The defendant's conviction is thus a controlled substance offense, and Defendant's objection should be overruled.

### 2. **Defendant's felony conviction for Assault Resulting in Serious Bodily Injury does not qualify as a crime of violence under current Ninth Circuit law, despite the fact that Defendant's conduct was intentional.**

On October 13, 2007, the Defendant was arrested by United States Park Police for assaulting another individual on federal property at the Oktoberfest celebration at the Pavilion located in Fort Mason, near San Francisco, California. The victim was rendered unconscious and was lying in a pool of his own blood before being transported to the

hospital. A witness was able to capture part of the assault on video, which according to court records, shows the Defendant repeatedly stomping on the head of an unconscious man before he is pulled away by bystanders. According to court records, the victim and his friend had been walking through the pavilion at Fort Mason when they were mistaken for another party and assaulted. Among other things, at the hands (or more appropriately foot) of Defendant, the victim suffered a broken nose, broken jaw, a concussion, bruises on his chest, neck and head, pain, swelling, depression, reduced sense of smell, chronic headaches and was left with Pratchard's foot print on his head.

On August 19, 2008, the Defendant was indicted in United States District Court for the Northern District of California on one (1) count of Assault Resulting in Serious Bodily Injury, in violation of 18 U.S.C. § 113(a)(6). On July 8, 2009, the Defendant pleaded guilty, without the benefit of a plea agreement, to the Indictment. The Defendant was sentenced to three (3) years of probation, community confinement for twelve (12) months, ordered to pay a special assessment of $100, ordered to attend drug and alcohol treatment, mental health treatment, and was ordered to pay restitution to the victim in the amount of $19,516. Despite the fact that Pratchard's actions were factually a crime of violence, the prevailing law in the Ninth Circuit requires a different outcome.

Under current Ninth Circuit law, Defendant's prior conviction for Assault Resulting in Serious Bodily Injury does not meet the definition of a crime of violence because the offense can be committed recklessly. For purposes of the record, the Government does not concede that the holding in *United States v. Orona,* 923 F.3d 1197 (9th Cir. 2019) is proper, however it remains the law in the Ninth Circuit.

**3. Conclusion.**

Defendant's 2002 conviction for Distribution of Ecstasy clearly meets the definition of a Controlled Substance Offense. In comparing the language of the U.S.S.G. §4B1.2 and the Manual for Courts-Martial, it is readily apparent that the full range of conduct contemplated by the Manual for Courts-Martial regarding the distribution of controlled substances falls precisely within the conduct defined in U.S.S.G. §4B1.2. The defendant's

conviction is thus a controlled substance offense, and Defendant's objection should be overruled.

Although Defendant's prior conviction for Assault Resulting in Serious Bodily Injury, in violation of 18 U.S.C. § 113(a)(6) does not meet the definition of "crime of violence" in the Ninth Circuit, at least two (2) other circuits have held that it does.  Despite the law in the Ninth Circuit, Defendant's actions were factually a crime of violence.

The Government reserves the right to file a supplemental pleading at a later date.

Respectfully submitted this 1st day of July, 2019.

          MICHAEL BAILEY
          United States Attorney
          District of Arizona

          *s/Beverly K. Anderson*

          BEVERLY K. ANDERSON
          Assistant U.S. Attorney

Copy of the foregoing served electronically or by
other means this 1st day of July, 2019 to:

Dan Cooper, Esq.
Laura Udall, Esq.
Counsel for Defendant Pratchard