MICHAEL BAILEY
United States Attorney
District of Arizona
BEVERLY K. ANDERSON
Assistant U.S. Attorney
Arizona State Bar No. 010547
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: bev.anderson@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>Joshua Joel Pratchard,<br><br>　　　　　Defendant. | CR 18-01256-TUC-CKJ (JR)<br><br>GOVERNMENT'S SENTENCING MEMORANDUM AND MOTION FOR UPWARD VARIANCE |

Plaintiff, the United States of America, by and through its undersigned counsel, hereby submits its Sentencing Memorandum and Motion for Upward Variance as set forth below.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant Pratchard was arrested June 1, 2018 on charges stemming from a six (6) month investigation involving the Defendant who manufactured firearms in San Diego and traveled on several occasions from San Diego, CA to Southern Arizona to participate in militia group operations with AZ Border Recon (AZBR).

The investigation began on January 30, 2018 when a Federal Bureau of Investigation confidential human source (CHS) contacted agents to inform them about the Defendant. The CHS noted that Pratchard arrived for the militia group operations with a short barreled-rifle, a silencer and other prohibited items. According to the CHS, Pratchard

became angry when Tim Foley, the leader of AZBR explained their standard operating procedures and rules of engagement when encountering illegal aliens or narcotics. The Defendant wanted to go "hands on" with illegal aliens which was contrary to the rules of the organization, and he argued with Foley on how to conduct patrols. Foley was concerned about the Defendant and prohibited him from engaging in future operations with the AZBR.

Defendant continued to travel to Arizona, and meet with the CHS even after he (Pratchard) was prohibited from participating in operations with AZBR. Many of the conversations between the CHS and Defendant were audio and video recorded. Pratchard admitted to the CHS that he manufactured his own firearms, silencers and ammunition in his home in San Diego. In fact, investigation revealed that Defendant had all of the necessary equipment in his home in San Diego to manufacture his own firearms and reloaded his own ammunition. Defendant engraved fraudulent company and serial number information onto several weapons, some of which were done to commemorate significant events such as his wife's birthday and his son's date of birth. Defendant admitted to the CHS that he manufactured firearms for his family members, including one for his father and one for his brother. He also admitted that he manufactured firearms for friends as well. Agents ran a criminal history check and learned that the Defendant is a prohibited possessor and has been for a number of years. Records revealed that Defendant has two (2) prior convictions, both of which were punishable by imprisonment for a term exceeding one (1) year. Documents revealed Defendant was convicted under the Uniform Code of Military Justice in 2002, of multiple counts or specifications of Wrongful Use and Distribution of

Ecstasy; plus he was convicted in 2009 of Assault Resulting in Serious Bodily Injury.

Defendant was arrested on June 1, 2018 in Tucson outside Casino Del Sol. Agents executed a search warrant on the vehicle he was driving at the time of his arrest and seized three firearms, a silencer, body armor and approximately 290 rounds of ammunition of various calibers. A search warrant was executed on Defendant's home in San Diego at the same time. Agents found a safe that contained eight firearms – four of which were registered to Defendant's wife and four of which had been manufactured by the Defendant. One of the "home made" firearms was in violation of Title 26. Agents also found firearm manufacturing equipment in the closet, including 16 vessels/containers of ammunition of various calibers and 31.6 pounds of smokeless powder - enough to manufacture approximately 8,700 rounds of 5.56 x 45mm rifle ammunition. Agents also found paperwork indicating his wife and father had purchased firearm components and his wife had purchased firearms.

Defendant was indicted June 27, 2018 on four (4) counts of Possession of A Firearm by Convicted Felon and two counts of Transferring a Firearm to an Out-of-State Resident. Six of the eight firearms that are the subject of this case were submitted to the Bureau of Alcohol, Tobacco, Firearms, and Explosives Firearms Technology Criminal Branch for examination and testing. ATF concluded that of the six items sent to them for analysis, two of the firearms were short-barreled rifles, one was considered "any other weapon", two of the items were silencers (also considered firearms) and one was a standard rifle. The total count was six firearms, five of which were in violation of Title 26 U.S.C. § 5845(a).

On November 1, 2018, a Superseding Indictment was returned which charged the

Defendant with four counts of Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1); two counts of Transferring a Firearm to an Out-of-State Resident, in violation of 18 U.S.C. §§ 922(a)(5) and 924(a)(1)(D); four counts of Possession of Unregistered Firearm, in violation of 26 U.S.C. §§§ 5841, 5861(e), 5812, and 5871; two counts of Transfer of Firearm in Violation of NFA, in violation of 26 U.S.C. §§§ 5861 (e), 5812, 5871; one count of Possession of Body Armor by Violent Felon, in violation of 18 U.S.C. §§ 931(a) and 924(7), plus a forfeiture allegation.  A total of eight firearms, six of which are Title 26 firearms and 1,464 rounds of ammunition are included within the Superseding Indictment. On February 8, 2019, the Defendant plead guilty to the Superseding Indictment, without the benefit of a plea agreement.

The present case is a continuation of Pratchard's disregard for the law and also demonstrates Defendant's propensity for anger and violence.  The Government asks this Court to impose a sentence that reflects the seriousness of Defendant's conduct and his danger to the community.

1. **The sentence Defendant received for the 2009 conviction of Assault Resulting in Serious Bodily Injury did not reflect the seriousness of his conduct**.

According to 18 U.S.C. § 3553 [T]he court, in determining the particular sentence to be imposed, shall consider

   (1) The nature and circumstances of the offense and the history and characteristics of the defendant;
   (2) The need for the sentence imposed
      (A)   To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense:
      (B)   To afford adequate deterrence to criminal conduct;

- 4 -

(C)     To protect the public from further crimes of the defendant; and
(D)     To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective matter.

On October 13, 2007, approximately 4.5 years after completing parole in his military sentence, the Defendant went to an Octoberfest drinking festival in the Golden Gate National Recreation Area and assaulted another individual. According to conversations with the victim, Pratchard initially struck him from the rear or the side, knocking him down.  Once down, Defendant continued to stomp on his skull with his foot. A witness reported that the Defendant continued to kick the victim while he was unconscious. A witness captured part of the assault on video, which according to court records, shows the Defendant repeatedly stomping on the head of an unconscious man before he is pulled away by bystanders. The victim was lying in a pool of his own blood before being transported to the hospital. The victim suffered a broken nose, broken jaw, a concussion, bruises on his chest, neck and head, pain, swelling, depression, reduced sense of smell, chronic headaches and was left with Defendant's foot print on his head. The Defendant claimed that he was coming to the rescue of his friend who was jumped by others. However, it was undisputed that the Defendant continued to punch the victim, even after he was unconscious.

In a letter to "Tim" dated April 7, 2016, found on Defendant's computer, which was seized from Defendant when arrested in the present case, Pratchard admitted the seriousness of his actions in the Assault case as follows:

"Then that all came crashing down when I got arrested *for beating someone within an inch of his life* for saving who I thought was my best friend from a beat down by 4 guys. Everyone abandoned me when I needed them most, went to prison, have a felony and ruined my life."

(Emphasis Added)

On August 19, 2008, the Defendant was indicted in United States District Court for the Northern District of California on one count of Assault Resulting in Serious Bodily Injury, in violation of 18 U.S.C. § 113(a)(6). On July 8, 2009, the Defendant pleaded guilty, without the benefit of a plea agreement, to the indictment.

The probation department calculated the guideline range at 27-33 months. Both the probation department and the government recommended a sentence of 33 months. On October 21, 2009, Defendant was sentenced to three years of probation, one year of community confinement, plus he was ordered to pay restitution to the victim in the amount of $19,516.[1]

Defendant's sentence did not reflect the seriousness of his actions.

### a. Defendant's performance on supervision was poor

On December 11, 2009, less than two months after being placed on probation, Defendant was arrested for Disorderly Conduct and Public Intoxication by Walnut Creek Police Department. Records reveal Defendant was intoxicated and got into a fight with a bouncer at 'Dan's Bar' in Walnut Creek. Charges were dismissed, however a Petition to Modify Defendant's Conditions of Supervision was filed by the probation department

---

[1] Defendant's probation was later modified, requiring him to pay $25 per month in restitution

based on the arrest and Defendant's excessive drinking, which was a violation of his probation.

On May 27, 2010, less than seven months after being placed on probation, and while the above-mentioned, petition was pending, Defendant was terminated from the Community Confinement Facility, for fighting with another person and for failure to follow the rules of the facility. An Amended Petition to Revoke/Modify Conditions was filed, alleging this new violation. After a hearing, the court found that Pratchard had violated the terms and conditions of probation. On January 5, 2011, the court reinstated him on probation with the original conditions, and several new conditions, including that his term in the community confinement center be extended for 3 months and that he avoid alcohol and not go to bars. He was further ordered to make a payment of restitution of $1500, which he did.

However, a little more than 4 months later, another petition was filed alleging that Pratchard had been terminated from the Community Confinement Facility for failure to make payments. Pratchard sought a waiver, however he was discharged nonetheless. On June 15, 2011, the court found that Pratchard had violated his conditions of supervised release. His conditions of probation were modified to allow Pratchard to be on home confinement with electronic monitoring for the balance of the half-way house commitment. Specifically, he was restricted to his residence except for employment, education, religious services, medical, substance abuse or mental health treatment, attorney visits, court appearances, court-ordered obligations or other activities as pre-approved by the probation officer. He was also ordered to perform 200 hours of community service and to submit to

alcohol testing.

Approximately three weeks later, the defendant *again* violated his terms and conditions of probation this time by leaving the jurisdiction, without permission of the court and being in the bar area of an establishment. On July 8, 2011, Pratchard was seen at the Coloma Club Café by the prosecutor in the case. According to court documents, photographic evidence was presented to the court. The court found Pratchard had violated his terms and conditions of supervision. He was sentenced to one hour in custody, thirteen months supervised release with the additional condition that he serve two weeks and sixteen weekends in custody. He was also ordered to perform 200 hours of community service and to participate in an anger management program, as directed by his probation officer.

On October 15, 2012, the court terminated Defendant's probation, despite the fact that he still owed $14,091 in restitution to the victim. According to the court order, the U.S. Attorney's Office could continue to collect restitution until October 20, 2029. Pratchard was directed to continue making payments to the U.S. Attorney's Office. Defendant has made no additional payments, however his tax refunds have been seized in order to satisfy his restitution commitment. Defendant still owes $9,420.25 in restitution to the victim.[2]

    **2. Although Defendant's conviction for Assault Resulting in Serious Bodily Injury, does not meet the current definition of a 'crime of violence' under**

---

[2] On May 11, 2015, the Defendant filed for Chapter 7 Bankruptcy in the Southern District of California, San Diego.

### Ninth Circuit law, the acts he committed were clearly vicious. An upward variance is necessary to satisfy factors set forth in 18 U.S.C. § 3553.

The government has conceded the fact that Defendant's 2009 conviction for Assault Resulting in Serious Bodily Injury does not meet the definition of a "crime of violence" in the Ninth Circuit. Because Assault Resulting in Serious Bodily Injury could be committed recklessly under the statute, it does not meet the definition of a crime of violence. The facts supporting Defendant's conviction for Assault demonstrates there was nothing reckless about the Defendant's conduct. The Defendant knowingly and purposefully kicked the victim in the head until he was unconscious and continued to kick him as he laid in a pool of his own blood. As stated above, Defendant himself admitted that he beat the victim within an inch of his life. If the assault conviction had qualified as a crime of violence, Defendant's beginning base offense level in the present case would have been 26, rather than 22. Because of the current state of the law in the Ninth Circuit, the true nature and violence of Defendant's actions are not reflected in the base offense level. This Court should impose an upward variance as the guidelines do not adequately account for the viciousness of Defendant's actions and other aggravating factors which are present.

Under Ninth Circuit law, a variance "occurs when a judge imposes a sentence above or below the otherwise properly calculated final sentencing range based on application of the other statutory factors in 18 U.S.C. § 3553(a). *United States v. Espinoza-Barraza,* 647 F.3d 1182, 1187 n.1 (9th Cir. 2011) (quoting *United States v. Cruz-Perez,* 567 F.3d 1142, 1146 (9th Cir. 2009).

When sentencing Defendant, the government asks this Court to take into consideration the fact that his sentence in the assault case did not reflect the seriousness of the offense.

### 3. **Defendant has a history of unresolved anger and violence. He also has a complete disregard for the law. As such he is a risk to society**.

The Defendant has a long history of violence, and unresolved anger. In fact, the PSR reports that Defendant was diagnosed with attention deficit hyperactivity disorder (ADHD) and bipolar disorder as a child. (PSR ¶ 59.) Defendant has been court ordered to attend anger management training in the past, however his anger and explosive behavior persists. The present case demonstrates that these issues continue and have gone unresolved. Defendant's blatant disregard for the law, coupled with his uncontrolled anger, makes Pratchard a danger to the community.

As set forth in the Presentence Report and previous pleadings filed by the Government, the Defendant enlisted with the Marine Corps on August 10, 1999, however, his career ended a short time later. In 2002, less than three years after Defendant enlisted, he was convicted of four counts of Wrongful Distribution and Use of Ecstasy in violation of United States Code of Military Justice Article 112a, United States Marine Corps, San Diego, California, Docket No.: 200301258. Two specifications of Assault and one specification of Wrongful Endeavor to Influence Testimony in an Official Investigation were withdrawn. He was sentenced to 30 months in the brig and received a Bad Conduct Discharge.

Although the Assault specifications and the specification of Wrongful Endeavor to

Influence Testimony in an Official Investigation were withdrawn, the facts surrounding the charges are disturbing and at a minimum are indicative of Defendant's anger problems. A Marine reported that on September 28, 2001, as he walked past the Defendant, Pratchard came up behind him, grabbed the back of his shirt, and pulled him. The Defendant told the Marine that he had seen and read all of the statements, and he knew he was responsible for his legal difficulties. Pratchard further admitted to the Marine, the night he discovered the Marine's involvement, he was outside of the Marine's room with a baseball bat, and that if he would have been home, the defendant was going to break his jaw with the baseball bat so that he would be unable to speak.

Defendant's military conviction and sentence were affirmed on appeal on May 18, 2004. Defendant was released from confinement and was on parole from April 15, 2003 until April 5, 2004.

On October 13, 2007, less than four years later, Defendant committed the Assault Resulting in Serious Bodily Injury, described above, in which he beat the victim "within an inch of his life." His supervised release ended on October 15, 2012.

On December 11, 2009, Defendant was arrested for Disorderly Conduct and Public Intoxication. Reports indicate he got into a fight with a bartender.

On May 27, 2010, Defendant was terminated from the Community Confinement Center for fighting with another inmate and for failure to follow the rules of the facility.

On March 9, 2014, Defendant was arrested for Battery/Domestic Violence by the San Diego Police Department. According to his current wife/victim of the DV, Pratchard became angry after they attended a church class. The Defendant's wife left the home and

returned at a later time. Defendant became verbally abusive and began yelling and throwing things in the home. Pratchard's wife told officers "Joshua then got in my face and told me I had five seconds to leave or he was going to hurt me." She also described how Pratchard picked her up and threw her on the bed. Defendant was arrested and taken into custody. The charges were later dismissed.

Defendant's temper, volatility and aggressive nature was also obvious in the present case. In fact, Defendant came to the attention of the CHS because he became visibly angry at times when he was informed by AZBR leader Foley that he was not allowed to have a silencer on his weapon and also that he was not allowed to go hands-on, or physically detain/restrain any undocumented immigrants.

In one of the recorded conversations, Defendant and the CHS discussed the possibility of running into a rip crew during the border operations. Pratchard asked "does this mean we get to engage rip crews"? The CHS responded "more than likely. Not looking forward to it." Defendant responded "I am." The CHS stated "Yeah, you think that. Shit gets real real quick." Defendant responded "I'm looking forward to it. I want to do it. I want to do it!" [3]

Because of Pratchard's actions and behavior during the border operations, he wasn't allowed to participate further with AZBR. It's clear that Defendant has a serious unresolved anger problem, which makes him a danger to the community.

---

[3] A review of the audio recording reveals Defendant seems excited about engaging rip crews.

Based on the facts set forth above the government respectfully requests this Court impose an upward adjustment and sentence the Defendant to a term of imprisonment that adequately reflects the seriousness of this offense, and the other factors set forth in 18 U.S.C. § 3553.

Respectfully submitted this 20th day of August, 2019.

        MICHAEL BAILEY
        United States Attorney
        District of Arizona

        *s/Beverly K. Anderson*

        BEVERLY K. ANDERSON
        Assistant U.S. Attorney

Copy of the foregoing served electronically or by other means this 20th day of August, 2019 to:

Dan Cooper, Esq.
Laura Udall, Esq.
Counsel for Defendant Pratchard