WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>      Plaintiff,<br>vs.<br>Josh Joel Pratchard,<br>      Defendant. | No. CR 18-1256-TUC-CKJ<br><br>**ORDER** |

Pending before the Court is the Motion for Sentence Reduction (Doc. 103) filed by Joshua Joel Pratchard ("Pratchard"). The government has filed a response (Doc. 111), Pratchard has filed a reply (Doc. 120), and the government has filed a sur-reply (Doc. 126). While the parties' briefs have been filed under seal because of private information, the Court finds it appropriate to publicly issue this Order. The Court will specify some of Pratchard's medical conditions, but will not go into detail.

*Background*

Pratchard pleaded guilty to the 13 count Superseding Indictment, which charged four counts of Possession of a Firearm by a Convicted Felon (counts 1, 3, 5, 6) two counts of Transferring a Firearm to an Out-of-State Resident (counts 2, 4), four counts of Possession of an Unregistered Firearm (counts 7, 9, 11, 12), two counts of Transfer of a Firearm in Violation of National Firearms Act (counts 8, 10), one count of Possession of Body Armor by a Violent Felon (count 13), and a forfeiture allegation. The offenses in this case occurred after Pratchard had at least two convictions of either a crime of violence or controlled substance offense: an Assault

Resulting in Serious Bodily Injury in violation of 18 U.S.C. § 113(a)(6), U.S. District Court, Northern District of California, Docket 3:08-cr-00553-MMC-1, a crime of violence, and Wrongful Distribution and Use of Ecstasy in violation of United States Code of Military Justice Article 112a, United States Marine Corps, San Diego, California, Docket No.: 200301258, a controlled substance offense.

During the August 27, 2019, sentencing hearing, the Possession of Body Armor by a Violent Felon was dismissed. Additionally, Pratchard's medical condition and history of addiction was discussed both in sentencing documents and at the hearing. This Court sentenced Pratchard, within the guideline range, to the custody of the Bureau of Prisons for a term of seventy-five (75) months with credit for time served on Counts 1, 3, 5, 6, 7, 9, 11, and 12 and sixty (60) months with credit for time served on Counts 2 and 4. The term of seventy-five (75) months imprisonment was run concurrently with the term of sixty (60) months imprisonment. Pratchard was also ordered to be placed on a five (5) year term of probation on counts 8 and 10 and a concurrent three (3) year term of supervised release following his release from imprisonment. Additionally, firearms, silencers, and ammunition were ordered forfeited.

Pratchard submitted an administrative request with the BOP for compassionate release, referencing that he had contracted COVID-19 and that should he contract it again, he would be at an elevated risk because of his medical condition.[1] Motion (Doc. 103, p. 2, Ex. A). Although not specifically stated, it is implied the BOP denied the administrative request for compassionate release. The government confirms this denial. Response (Doc. 111, Ex. E).

The government asserts that, while Pratchard's diagnosis of hypertension may or may not place him at an elevated risk and could arguably present an extraordinary and compelling reason warranting compassionate release, the majority of Pratchard's diagnosed conditions

---

[1] The request included reference to Pratchard's heart and lung tissue conditions and his diagnosed hypertension.

do not. The government also points out that, because Pratchard contracted and recovered from COVID-19, he is now at a lower risk of serious illness should he be reinfected. Further, because Pratchard is fully vaccinated, his medical condition does not present an extraordinary and compelling reason warranting compassionate release.

Pratchard is a 41 year old male who is housed at FCI Lompoc. He has an anticipated release date of September 29, 2023. On December 10, 2020, following a review of this case pursuant to General Order 20-28, the Federal Public Defender requested appointment of counsel for a potential claim to a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). Counsel was appointed to assist Pratchard and, on May 26, 2021, a Motion for Sentence Reduction (Doc. 103) was filed. Documentation submitted by Pratchard establishes he suffers from both physical and mental conditions and uses multiple medications. Motion (Doc. 103, Exs. B, C, D). A response (Doc. 111), a Reply (Doc. 120), and a Sur-Reply (Doc. 126) have been filed. A Notice of Supplemental Authority (Doc. 127) and a Response to the Notice of Supplemental Authority (Doc. 128) have also been filed.

*First Step Act*

The First Step Act went into effect on December 21, 2018. See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. Prior to the passage of the First Step Act, only the Director of the BOP could file a motion for compassionate release. Section 603(b) of the First Step Act modified 18 U.S.C. § 3582(c)(1)(A) with the intent of "increasing the use and transparency of compassionate release." Pub. L. No. 115-391, 132 Stat. 5194, at *5239 (capitalization omitted). That section now provides that a sentencing court may modify a sentence either upon a motion of the Director of the BOP "or upon motion of the defendant after [he] has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility . . . " 18 U.S.C. § 3582(c)(1)(A).

The Act provides that a sentence may be reduced for "extraordinary and compelling

1  reasons."   Additionally, district courts are granted broad discretion in determining whether
2  to grant relief.  *US v. Parker*, No. 2:98-CR-00749-CAS-1, 2020 WL 2572525, at *4 (C.D.
3  Cal. May 21, 2020), *citation omitted*.

5  *Exhaustion of Remedies*
6       The statute clearly imposes an administrative exhaustion requirement before seeking
7  review by a district court.  *See e.g., United States v. Weidenhamer*, No. CR1601072001
8  PHXROS, 2019 WL 6050264, at *1 (D. Ariz. Nov. 8, 2019).  In this case, Pratchard
9  submitted a request for compassionate release to the warden and the request was denied.  As
10 the government has conceded Pratchard has exhausted his administrative remedies, Response
11 (Doc. 111, p. 9), the Court finds Pratchard has exhausted his administrative remedies.  *See
12 e.g. United States v. Spears*, 98-cr-208 (D. Ore. Sept. 30, 2019); *United States v. Robinson*,
13 16-cr-5307 (W.D. Wash. July 8, 2019).

15 *Request for Compassionate Release*
16      Pratchard cites his vulnerability to COVID-19 based on his health problems as
17 extraordinary and compelling reasons for a sentence reduction.  The Center for Disease
18 Control and Prevention ("CDC") indicates Pratchard's hypertension could "possibly . . . make
19 [him] more likely to get very sick from COVID-19."  Coronavirus, People with Certain
20 Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/
21 need-extra-precautions/people-with-medical-conditions.html.[2]  Indeed, having "hypertension
22 . . . may increase your risk of severe illness from COVID-19."  https://www.cdc.gov/

---

[2] The Court finds it appropriate to take judicial notice of information provided on government websites.  *See Arizona Libertarian Party v. Reagan*, 798 F.3d 723, 727 (9th Cir. 2015), *citations omitted* (the Court may take judicial notice of "official information posted on a governmental website, the accuracy of which [is] undisputed"); *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) (the court can take judicial notice of "[p]ublic records and government documents available from reliable sources on the Internet," such as websites run by governmental agencies), *citations omitted*.

coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#serious-heart- conditions. For purposes of this Order, the Court finds Pratchard's medical condition may make him more likely to get very sick from COVID-19 should he be reinfected. However, the Court also considers that the CDC has also stated that nearly half of adults in the United States suffer have hypertension, with the prevalence being higher among men than women; further, more than 54% of persons between the age of 40-59 suffer from hypertension. Hypertenion Prevalence Among Adults Aged 18 and Over: United States, 2017-2018, https://www.cdc.gov/nchs/products/databriefs/db364.htm (last accessed 4/12/22). In other words, Pratchard's condition is not extraordinary.

In his Reply, Pratchard expands on his assertion that he has a heart condition and lung tissue damage. While he acknowledges the documentation does not support his assertion that he suffers from a heart condition, Pratchard asserts the medical staff is unreasonably refusing to perform appropriate tests. Pratchard has submitted a letter drafted by him on October 8, 2021, documenting the delay in receiving a response to his health complaints and asserting he is not receiving the medical care he needs. Reply (Doc. 120, Ex. B, pp. 1-2). Additionally, the documentation does support Pratchard's assertion that, following his COVID-19 infection, nodules appeared on Pratchard's lungs. Pratchard asserts the conditions frighten him and threaten his life.

Pratchard's medical records indicate he has received tests regarding the heart condition. Reply (Doc. 120, Ex. A, pp. 23, 26, 27). However, the documentation does not establish that any follow-up concerning the nodules on Pratchard's lungs was ever conducted. Further, Pratchard points to a class action regarding medical treatment and COVID-19 protocols at FCI Lompoc, as well as inspection reports ordered by the United States District Court for the Central District of California which discuss deficiencies of COVID-19 protocols at FCI Lompoc.

The government asserts Pratchard raises new arguments in his Reply. However, Pratchard's original motion did reference cardiovascular conditions and that they may be

1  caused by COVID-19. When read in conjunction with Pratchard's administrative request for
2  compassionate release, it appears Pratchard may have also been attempting to raise these
3  conditions in his original Motion. The government also asserts Pratchard's new arguments
4  regarding adequate care at the facility are more appropriately brought in a civil suit.

5        The immunity provided by vaccine and a prior infection, while not complete, is high.
6  Science Brief: SARS-CoV-2 Infection-induced and Vaccine-induced Immunity,
7  https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/
8  vaccine-induced-immunity.html (last accessed April 12, 2022). However, the conditions
9  discussed by Pratchard in his Reply may also increase his risk from COVID-19. *See e.g.,*
10 Effect of COVID-19 on Lungs: Focusing on Prospective Malignant Phenotypes,
11 https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7766284/ (last accessed April 12, 2022).
12 Moreover, Pratchard alleges he is not be receiving adequate medical treatment. The
13 information regarding the heart condition and lung nodules was more thoroughly discussed
14 in Pratchard's Reply.

15       The Court also considers that a May 12, 2021, report regarding the inspection of FCI
16 Lompoc determined the "BOP's lack of progress in correcting the previously identified issues
17 'forces a pessimistic assessment about how seriously the facility and the BOP take their own
18 policies, the guidelines of the CDC and basic infection control.'" Reply (Doc. 120, p. 3),
19 *citing* May 12, 2021, Second COVID-19 inspection of BOP Lompoc by Dr. Homer Venters
20 (Doc. 120, Ex. E, p. 26). However, the reports provided by Pratchard reference the historical
21 actions/failures of FCI Lompoc, but do not address whether FCI Lompoc currently provides
22 adequate safeguards against COVID-19. Indeed, FCI Lompoc is currently operating at a
23 minimally modified level due to COVID-19 and there are no current active COVID-19 cases
24 at that facility. COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last accessed
25 April 12, 2022).

26       While the Court does not disagree with the government's assertion that inadequate
27 care is more appropriately raised in a civil case, the lack of adequate care may provide a basis
28

for compassionate release. *See e.g. United States v. Spencer*, 519 F. Supp. 3d 200, 211 (E.D. Pa. 2021) (court considered that BOP had not been able to provide adequate medical care to treat defendant's conditions in determining whether to grant compassionate release); *United States v. Jacobs*, 470 F. Supp. 3d 969, 975 (S.D. Iowa 2020) ("Courts have found that a defendant can present a sufficiently extraordinary and compelling reason for release if he or she receives inadequate care following a COVID-19 diagnosis or has underlying health conditions that can make that diagnosis more deadly."); *United States v. Arreola-Bretado*, No. 3:19-CR-03410-BTM, 445 F.Supp.3d 1154, 1158–59, (S.D. Cal. May 15, 2020) ("Notwithstanding actions to try to deal with the large number of COVID-19 cases at Otay Mesa, the conditions there are not sufficient to care for [defendant]".).

However, Pratchard provides no basis, other than his unsupported assertions, that he is not receiving adequate care. *See United States v. Flowers*, No. 3:16-CR-00035-SLG, 2020 WL 4495454, at *3 (D. Alaska Aug. 3, 2020 (defendant bears the burden of establishing "compelling and extraordinary reasons exist that justify compassionate release"). For example, Pratchard has received testing regarding his heart issues and is receiving medication for his hypertension. Further, Pratchard has not specified or cited to any expert or written authority as to what additional tests or actions are needed regarding the heart and lung issues. As Pratchard has the burden to establish compassionate release is warranted, the Court finds Pratchard has failed to establish that he is not receiving adequate care at FCI Lompoc. Indeed, Pratchard has not shown that "FCI Lompoc is unable to monitor and adequately treat his medical conditions." *United States v. Hernandez*, No. 118CR00152DADBAM, 2020 WL 5797896, at *6 (E.D. Cal. Sept. 29, 2020), *citing United States v. Ayon-Nunez*, No. 1:16-cr-00130-DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) ("Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.").

A term of imprisonment may be modified after it has been imposed under 18 U.S.C. § 3582(c)(1)(A)(I) after a court considers "the factors set forth in section 3553(a) to the extent that they are applicable" if "extraordinary and compelling reasons warrant such a

reduction." 18 U.S.C. § 3582(c)(1)(A)(I). Such a reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id*. However, the Ninth Circuit has held, that the Sentencing Commission's policy statement set forth at U.S.S.G. § 1B1.13 applies only to motions for a sentence reduction filed by the director of the Bureau of Prisons, and not to motions filed by or on behalf of defendants who have met the exhaustion requirement in § 3582(c)(1)(A). *United States v. Aruda*, 993 F.3d 797 (9th Cir. 2021). As the Sentencing Commission has not updated § 1B1.13 since § 3582(c)(1)(A) was amended to allow a defendant to file a motion after exhausting his administrative remedies, the Commission "has not yet issued a policy statement 'applicable' to" such motions. *Id*. at 802. Although the statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, "they are not binding." *Id*., *citing United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). Therefore, "district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise." *Id*. at 801, *quoting United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020); *see, e.g., United States v. Brown*, No. 4:05-CR-00227-1, 411 F.Supp.3d 446, 449, 2019 WL 4942051, at *2 (S.D. Iowa Oct. 8, 2019); *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *5 (M.D.N.C. June 28, 2019); *United States v. Cantu*, 423 F. Supp. 3d 345, 351 (S.D. Tex. 2019); *United States v. Fox*, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019). While the Court is informed by this Policy, the Court recognizes the guidance by this Policy, however, is limited, because, by its terms "the policy-statement provision that was previously applicable to 18 U.S.C. § 3582(c)(1)(A) no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the *appropriate use* of sentence-modification provisions under § 3582." *Cantu*, 423 F. Supp. 3d 345, 351 (S.D. Tex. 2019).

The Court considers that Pratchard's "medical conditions do not rise to the level of terminal illness or substantially diminish [Pratchard's] ability to provide self-care from within [the facility]" *United States v. Wilfred*, 2020 WL 4365531, at *4 (E.D. La. July 30, 2020).

1  Further, the Court has concluded that Pratchard has not shown that he is not receiving adequate
2  care for any serious medical condition.  The Court recognizes that compassionate release takes
3  "on added weight because of the COVID-19 virus raging across the globe."  *United States*
4  *v. Esparza*, No. 1:07-CR-00294-BLW, 2020 WL 1696084, at *2 (D. Idaho Apr. 7, 2020)
5  *Esparza*, 2020 WL 1696084 at *2.  However, as stated by government officials, "This is
6  becoming a pandemic of the unvaccinated."  https://www.whitehouse.gov/
7  briefing-room/press-briefings/2021/07/16/press-briefing-by-white-house-covid-19-respon
8  se-team-and-public-health- officials-45/ (last accessed April 13, 2022).  In fact, "[t]he good
9  news is that if you are fully vaccinated, you are protected against severe COVID,
10 hospitalization, and death, and are even protected against the known variants — including
11 the Delta variant — circulating in the country."  *Id*.; *see also*
12 https://www.whitehouse.gov/wp-content/uploads/2021/07/COVID-Press-Briefing_
13 16July2021_for-transcript.pdf (last accessed April 13, 2022);
14 https://www.whitehouse.gov/covidplan/ (last accessed April 13, 2022) ("[B]ecause of both
15 lower severity of the Omicron variant and a stronger level of population immunity from
16 vaccinations, Omicron has caused relatively fewer cases of severe COVID-19.  Compared
17 to prior waves of COVID-19 in the United States, the Omicron wave has had a lower
18 proportion of cases resulting in hospitalization or death.").

19      In light of the current conditions at FCI Lompoc and Pratchard's vaccinated status,
20 the Court, in its discretion, "cannot conclude, particularly in light of his vaccination, that
21 [Pratchard's] current exposure to COVID-19 presents "extraordinary and compelling reasons"
22 to justify his release pursuant to 18 U.S.C. § 3582(c)(1)(A).  *See United States v. Cortez*, No.
23 CR180085801PHXSPL, 2021 WL 689923, at *1 (D. Ariz. Feb. 23, 2021) (collecting cases).
24 Simply put, Pratchard "cannot satisfy his burden in demonstrating that COVID-19 still poses
25 a severe risk to him now that he is fully vaccinated."  *United States v. Upshaw*, No.
26 1:14-CR-00256-NONE, 2021 WL 2417012, at *1 (E.D. Cal. June 14, 2021).  Indeed,
27 Pratchard has not shown that he is less likely to be reinfected with COVID-19 if released.
28

1  Additionally, the Court does not find that other reasons, or a combination of reasons, present extraordinary or compelling grounds warranting compassionate relief.

In sum, the speculative possibility of COVID-19, even when combined with Pratchard's hypertension and other conditions, is not an extraordinary and compelling reason to release him now, particularly considering BOP's efforts to contain the spread of COVID-19 in its facilities. Nor has the defendant provided any evidence that he will be less likely to contract COVID-19 if released. Pratchard's circumstances are, in the present pandemic/endemic,[3] far closer to ordinary than "extraordinary."

*18 U.S.C. § 3553(a)*

Even if the Court found that extraordinary and compelling reasons had been demonstrated by Pratchard, the Court would also need to consider the § 3553(a) factors before determining whether compassionate release is appropriate. Indeed, the requirement that the reduction is consistent with Sentencing Commission policy focuses on community safety. The Guidelines provide that compassionate release is appropriate only where the "defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Factors to consider include the nature of the offense, the history and characteristics of the defendant, and the nature of the danger. *Id*.; *see also* 18 U.S.C. § 3142(g) factors.

Pratchard's history indicates he had a 2001 conviction for Wrongful Distribution and Use of Ecstasy and an October 13, 2007 conviction for Assault Resulting in Serious Bodily Injury. During the sentencing hearing, this Court found these convictions did not enhance Pratchard's base offense level as crimes of violence, but considered the summaries of those offenses in sentencing Pratchard. Although Pratchard served in the military, he received a bad conduct discharged. However, Pratchard has consistently been employed (including a

---

[3] Is Covid-19 endemic yet? Experts aren't so sure, https://edition.cnn.com/2022/04/13/world/coronavirus-newsletter-intl-13-04-22/index.html (last accessed April 13, 2022).

period of self-employment) and operated a non-profit organization.[4]  Further, Pratchard has substantial family support.  Additionally, as recognized by the Court at the time of sentencing as a mitigating factor, Pratchard is sincerely remorseful that he was involved in the activity and has some mental health issues.[5]

However, the circumstances of the offenses indicate Pratchard traveled from another state with weapons to work with a border militia group who ejected him from the group.[6] After a confidential source advised government agents that Pratchard may be manufacturing firearms, suppressors and ammunition; Pratchard indicated a willingness to sell the items. When the source subsequently purchased a firearm from Pratchard, Pratchard told the source, "Never get rid of this rifle. If you ever get caught with this, tell them you customized it. It is highly illegal. This will put me away for many, many years."  Presentence Report ("PSR") (Doc. 77, pp. 6-7).  The source purchased an additional firearm, as well as a suppressor and ammunition from Pratchard.  After Pratchard was arrested, additional firearms and related items were seized.

Pratchard's convictions in this case were for illegal trafficking in instruments that can take a human life; these convictions followed a history that included anger, aggression, and violence.  Further, the offense conduct in this case exhibited ongoing aggression and violence.  Moreover, the offenses involved weapons that were illegal and for which it was illegal for Pratchard to possess.  The Court finds Pratchard continues to be a danger to the

---

[4] At sentencing, the parties disputed whether Pratchard's action were actually community service.  The Court recognized the dispute and found it was a "wash" and not particularly relevant.

[5] Pratchard's Motion provides additional documentation to support this mitigating factor.

[6] Pratchard informed the leader of the border militia group that he was a former member of the U.S. Marine Corps and was under the impression he could go hands on with illegal aliens.  Pratchard became angry when the leader explained to him their standard operating procedures and rule of engagement when encountering illegal aliens or illegal narcotics.

community.

Pratchard was sentenced to 72 months in the custody of the Bureau of Prisons; this sentence was at the low end of the advisory guideline range.  While this adequately reflected the seriousness of the offense, promoted respect for the law, provided a just punishment for the offense, and provided an adequate deterrence to criminal conduct, a reduction of the sentence would not further these goals.  The Court also considers that a reduced sentence would result in sentence disparities among defendants with similar records who have been found guilty of similar conduct.

*Conclusion*

In its discretion, the Court declines to find compassionate release is warranted in this case.  *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020) (holding district court did not abuse its discretion by denying compassionate release despite defendant's eligibility for that relief).

Accordingly, IT IS ORDERED:

1. The Motion for Sentence Reduction (Doc. 103) is DENIED.

2. The Clerk of Court shall mail a copy of this order to Joshua Joel Pratchard at:

>  Joshual Joel Pratchard No. 12267-111
>  FCI Lompoc
>  3600 Guard Road
>  Lompoc, CA  93436

DATED this 19th day of April, 2022.

_____
Cindy K. Jorgenson
United States District Judge